tion could not, by an affirmative suit or proceeding, assail a judgment by confession admitted to be fraudulent. The law would not listen to them at all. And where they have got possession of the debtor's property by a fraudulent and void conveyance, they cannot be allowed to hold it against a judgment which is valid against the debtor and fair in its consideration, on the mere ground that the statement of such consideration is not sufficient." There is no validity in the third ground. The Code expressly authorizes the entry of a judgment for a debt not yet due (subdivision 2, § 1274, Code Civ. Proc.), and for its collection (section 1277, Code Civ. Proc.). The defendants Coope and Shuttleworth contend that the complaint should be dismissed because an execution had not been issued upon the judgment for $3,198.20 at the time of the commencement of the action. This contention cannot be maintained. An execution had been issued and returned unsatisfied on the judgment entered on December 27, 1899, for $1,988.77, and that fact gives the court jurisdiction over the subject-matter of this action. Having obtained jurisdiction, the court will go on and grant such further relief within the scope and meaning of the issues as the parties might be equitably entitled to in connection with the transactions under investigation. Carpenter v. Osborn, 102 N. Y. 552, 7 N. E. 823. See, also, Edwards v. Rosenheim, 74 Mo. App. 621. Let judgment be entered for the plaintiff, with costs, and an extra allowance of 5 per cent. on the amount involved, as above directed. Judgment to be settled on notice.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, PATTERSON, O'BRIEN, INGRAHAM, and LAUGH-LIN, JJ.

T. C. Ennever, for appellants.
C. W. Dayton, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the court below.

VAN BRUNT, P. J., and McLAUGHLIN, J., dissent.

---

### In re OPENING OF SUMMIT AVE.

(Supreme Court, Appellate Division, First Department. June 12, 1903.)

1. APPEAL—REVIEW—OBJECTIONS BY RESPONDENT.

On an appeal by the city alone from an order of court in so far as it refused to confirm the report of commissioners of estimate and apportionment as to certain parcels of land, and referred the report back to them, with directions to award substantial damages to the owners of said parcels, on the basis of certain existing private, but not public, easements over the lands, the owners could not contend that the alleged private easements had been abandoned or lost by adverse possession.

2. EMINENT DOMAIN—SUBSTANTIAL AWARDS.

Evidence examined, and *held* to show that the awards made by the commissioners of estimate and apportionment to the owners of certain parcels of land taken for a street were substantial and adequate, and that the Special Term erred in referring the report back on the ground that substantial awards had not been made.

3. SAME—AWARD FOR BUILDING.

Where a city, in taking a parcel of land for a street, destroys a building which has been erected on the land with the consent of persons owning private easements therein, the owner of the land is entitled to a substantial award for the building.

Appeal from Special Term, New York County.

In the matter of acquiring title to Summit avenue from East 161st street to East 166th street, in the city of New York. From an order of the Special Term, in so far as said order denies the motion of the city confirming the report of the commissioners of estimate and apportionment as to parcels Nos. 1, 4, 8, 33, and 55 (see 71 N. Y. Supp. 207), the city appeals. Affirmed in part, and reversed in part.

The commissioners of estimate and apportionment in this proceeding made their final report November 24, 1900. It was presented to the court for confirmation December 21, 1900. The owners of five parcels, designated in this proceeding as parcels Nos. 1, 4, 8, 33, and 55, filed objections to the report, resulting in the order from which this appeal is taken.

It appears that on July 3, 1851, a map called a "map of Highbridgeville" was filed in the office of the register of Westchester county, on which Summit avenue, among other streets, is delineated; but it appears that no dedication thereof to the public was ever made or accepted, and that the same was never opened or traveled as a way of ingress and egress·to the abutting premises. Said five parcels lie within the bounds of said avenue. Summit avenue, as proposed to be taken by this proceeding, is the same, to that extent, as the avenue of the same name delineated upon said map. The common source of title of all said titles, so far as appears from the record before this court, is David McLeod. In 1871 he acquired title by a referee's deed in foreclosure to two-fifths of certain lots delineated on said map as fronting on Summit avenue, together with the land extending to the center of the avenue, "subject to the use thereof by all the owners of lots laid down on said map, and by the public generally as public avenues or streets, according to said map." The premises included in this deed covered parcels 1, 4, and 8. David McLeod appears to have acquired title, also in 1871, to the other three-fifths by deeds, "subject, however, to so much of said premises as has been taken for streets and avenues and for the Spuyten Duyvil and Port Morris Railroad Company, to the rights of the public and of the said railroad company in the lands so taken." It does not· appear where McLeod got title to parcels Nos. 33 and 55, but the testimony shows that he owned them in his lifetime. In 1882 he deeded the lot abutting parcel No. 33 to the respondent Annie E. Raynor, together with the land to the center of the adjoining avenues, "subject to the use thereof by all the owners of lots laid down on said maps and by the public generally as public avenues according to said map." David McLeod died in 1884, and the respondents and David A. McLeod, as his successors in interest, partitioned the land owned by him at his death by deed dated April 12, 1894. By the partition deed the respondent Annie E. Raynor took the premises abutting on parcels Nos. 4, 8, and 55, and the respondents H. B. and A. H. De Voe took parcel No. 1. Said map is mentioned in the partition deed, and the lot lines thereof are referred to in the description of the premises adjoining parcels Nos. 4 and 8. The descriptions of premises abutting on parcels Nos. 1, 4, and 8 include the bed of Summit avenue according to said map; but all of the descriptions include, also, "all the right, title and interest and estate of the parties * * * in and to so much of said Summit avenue as lies within the boundary lines aforesaid," or to so much of Summit avenue and the other streets and avenues "as lies in front of and adjacent to said premises to the center line of said avenues and streets respectively." It appears that the respondents and their predecessor in title have occupied the premises in question exclusively ever since acquiring title, and have kept the same inclosed by fences and paid taxes thereon. As to parcels Nos. 1, 4, and 8, this has been for 30 years and upwards; as to parcels Nos. 33 and 55, the exact time is not shown, but it was prior to 1882 as to parcel 33, and prior to 1884 as to parcel 55. On parcel 33 there is a barn, henhouse, and outbuildings, in addition to the fer~es. These were valued by respondents' witnesses at $1,180, and there is no evidence to the contrary. From the damage maps it also appears that many other owners of the so-called avenue have fenced it and built upon it. It appears that between 161st street and 165th street there are at least six fences crossing the so-called avenue; that on parcel 4 there is an apple tree two inches in diameter;

that there are on other parcels between 161st and 165th streets two cesspools, dovehouse, open shed, 1½ story frame stable, with stone basement, two-story frame barn, truck gardens, and fruit trees, and two-story frame barn, with one-story extension, in addition to the buildings already mentioned as being on parcel 33. The appellant's expert testified that, assuming there were a public easement over Summit avenue, so called, the fee value of the land in question would be merely nominal, but, assuming that there were no public easement, the value of the land would be 33⅓ cents per square foot, except for parcel 55, which would be 80 cents per square foot. From the damage map, the number of square feet appears as follows: Parcel 1, 1,875; parcel 4, 2,500; parcel 8, 1,407.25; parcel 33, 2,500; parcel 55, 2,304. Appellant's expert further testified that if there were no public easement, but if there were a private right of way over the so-called avenue in numerous other owners of abutting premises, he would still consider the fee value as merely nominal. The several damage parcels in question are each 25 feet in width, and lie between the center of the so-called avenue and the side thereof. By comparing the damage map with the awards, it appears that each abutting owner has been allowed by the commissioners of estimate and apportionment a sum equal to $1.25 per lineal foot as the value of the land taken, and as damages to the abutting land, without any allowance for improvements.

The respondents filed exceptions. The order of the Special Term confirmed the report of the commissioners as to all other parcels and in all other respects, except as to parcel No. 1, owned by Harkness B. De Voe and Arthur H. De Voe, and parcels Nos. 4, 8, 33, and 55, owned by Annie E. Raynor; and, as to these parcels, the order expressly directs that the report be returned to the commissioners for revision and correction, in accordance with the opinion delivered by the justice who heard the motion. That part of the opinion which is made part of the order discusses the evidence, and the claims of the city and of the owners of these parcels; declares that Summit avenue never became a public highway, but that the owners of the other lots abutting thereon, who obtained title by deeds referring to said map of Highbridgeville, have private easements over these parcels, and that the owners of the parcels, on account of the existence of these private easements, were not entitled to be awarded as for a fee-simple absolute, but only for the value of the fee subject to the easements, and that this entitled them to a substantial award, which, as he viewed the evidence, had not been made; and further declares that compensation should have been made for the value of the buildings. The owners of the other parcels sought to be acquired by this proceeding filed no exceptions to the report of the commissioners, and the owners of these parcels as to which the city has taken an appeal have not appealed from the order referring the report back to the commissioners with directions for revision, as stated.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

John P. Dunn, for appellant.
Robert J. Fox, for respondent.

LAUGHLIN, J. Counsel for respondents argues that the private easements over the parcels in question have been abandoned or lost by adverse possession. This contention may be well founded, and would require serious consideration if the question were before us, but it is not presented. If the property owners had desired to present that question for review, they should have appealed from the order in so far as it limits the commissioners in revising their report to awarding substantial damages on the basis of existing private easements.

Counsel for the appellant contends that the learned justice who heard the motion at Special Term misapprehended the testimony of

the city's expert. The opinion indicates that the justice understood the testimony of this expert to be that the value of the fee, on the assumption that there was no public easement over the parcels, was .33⅓ cents per square foot. In this we think he was in error. The fair construction of the testimony of the expert, taken as a whole, is that, if there were outstanding private easements in favor of the owners of any considerable number of parcels, the value of the fee subject to such easements would be only nominal—substantially the same as if it were subject to public easements. Although the awards made by the commissioners are not very large, they are substantial, as distinguished from nominal, awards. A nominal award would only have required an award of six cents for each parcel, but it seems to be the practice to award a dollar in such cases. The award, as made, as has been seen, averages $1.25 per lineal foot along the avenue. The length along the avenue of the shortest of these parcels is 56²/₉ feet, and of the longest 100 feet, so that the awards for these parcels vary from $70.36 to $125. It cannot be maintained that these are nominal awards, nor can it be said that they are so inadequate as to justify the court in setting aside the report of the commissioners. The land in that locality is not very valuable. The city's expert testified that, assuming the land to be free of all easements, public and private, it was only worth 33⅓ cents per square foot, which would be $833 per lineal foot, measured along the avenue. The award made by the commissioners for these parcels, subject, as they deemed them, to many private easements, is more than one-seventh of that amount. It is evident that the title of many of the other parcels is in substantially the same condition with reference to these private easements as those of the respondents. The commissioners treated them all alike. The entire expense of this proceeding is to be defrayed by local assessment. The other property owners having acquiesced in the awards, if the respondents should receive larger awards the result would be inequitable. This, of course, should not deprive them of any legal right, but it should influence the court in exercising judicial discretion in a doubtful case. We are of opinion, therefore, that substantial awards were made, and that the Special Term erred in referring the report back to the commissioners upon the theory that substantial awards had not been made.

As appears from the statement of facts, the only buildings upon parcels owned by the respondents are upon parcel 33. Assuming the existence of private easements, as must be assumed upon this record, in the absence of an appeal by the property owners, we are of the opinion that a substantial award should have been made for the buildings. As stated in the opinion delivered at Special Term, it does not appear but that these buildings were erected with the consent of the owners of the private easements. In any event, they have been suffered to remain, and no action appears to have been taken to interfere with their existence where constructed. The city is not in a position to insist that they should be moved. It seeks to take the land as it exists, and it must make just compensation for the buildings, in view of whatever rights the owners may have to maintain them where they are. If this right be absolute, their value

should be awarded; but, if the right be subject to the right of the owners of outstanding easements to require their removal, then the valuation should be ascertained in view of the probability or improbability of the exercise of such right.

It follows, therefore, that the order should be reversed in so far as it refers the report back to the commissioners to revise their awards for fee damages, and the report of the commissioners, in so far as it related to fee damages, awarded to the respondents, should be confirmed; but, in so far as the order refers the report back to the commissioners for the purpose of making a substantial award for the value of the buildings on parcel No. 33, it should be affirmed, without costs. All concur.